Good morning, Your Honors. Mark McCulloch for Appellant Marcella Truss. I'd like to reserve two minutes of my time for some rebuttal this morning. Your Honors, may it please the Right to a fair trial before a neutral magistrate is at the heart of our adversarial system of justice. It's a fundamental principle, particularly in a case of a criminal defendant, that when she comes before the court, faced with the overwhelming and nearly limitless power of the government, with all of its resources arrayed against her, that the court that will hear the matter will be neutral, patient, and unbiased in favor of one side or the other. It's so that the court doesn't show that it has, you know, it's not supposed to have any skin in the game. It's not supposed to take sides. In this case, the record below shows that the trial judge here spent a considerable amount of time going far beyond the clarifying questioning that Rule 614 permits, went far beyond asking a clarifying question of a particular witness because she didn't hear the answer or wanted to, you know, a juror had raised a question about, gosh, Judge, I didn't hear that answer. I'd like to have that, I'd like to know what that answer was. Here, the judge... Trial counsel never objected to the questioning or commenting. That's correct, Your Honor. And the absence of multiple contemporaneous objections on the record to the multiple instances of the trial court's intervention, and I would argue improper intervention... Whether or not, whatever you would argue, we're looking at plain air here, which is the highest standard we have to reverse a district judge on a question of this sort, correct? That's correct, Your Honor. You have to point to some precedent that controlled the district court's behavior in that courtroom, which told the district court, you can't do that. Your Honors, if I would, if I could point, what I think is... What's your best case for that? What I think is instructive is both the Metz case, which is an unreported case, but it was cited in my brief, and also the Wright case. I think both of those cases, they discuss and identify the proper role of the court, the proper role of what is permissible and what is not, and take it in the context of the entire case, the context of the questioning, the context of the conduct at trial, translated, of course, into the context of sentencing that followed. I believe that there was... Hill says that the conduct of the district judge has to have a clear effect on the jury. It doesn't seem there's any evidence in the record or development of any other than the palpable outward effect on the jury. Your Honor, I would... If I may, I know I'm into my rebuttal time, but if Your Honor, I can tell you that understanding what the jury decided or didn't decide, what effect it had on the jury or not, that cannot be known. That simply cannot be known. Absent trial counsel going back in the jury room, sitting there, taking notes. That's the only way that can be done. And so I agree that Hill sets that up, but the conclusion that the jury... We have to show evidence that the jury was affected, simply cannot be done. The point of it is to say the jury could have been impacted. And if they could have been impacted, then the error is... It does have that prejudicial effect. You saved your rebuttal time, but you've got to cite as a case which says that the judge just can't do that, period. That's your problem. May I reserve the remainder, Your Honor? Mr. Linton. May it please the court, counsel. My name is Charles Scott Linton. I represented Howard Lennard Carraway at trial. I also represent him here on appeal. Mr. Carraway raises two issues on appeal. One concerns the two substantive obstruction of justice counts in the indictment, count 59 and 60, as it relates to the application of sentencing guideline 3C1.1. Without abandoning that particular issue, I want to confine most of my comments to the second issue in that case, and that concerns the sufficiency of the evidence presented by the government to justify guilty verdicts in the substantive obstruction counts 59 and 60. Can I ask you a question? Certainly. I tend to agree with your briefing on the issue of the... I mean, the statements the defendant made to the FBI in probation office were somewhat preposterous and your argument is, as I understand it, centered on materiality. I suppose more of a legal question, but my understanding of criminal law in USA v. Gaudet and the Supreme Court is that materiality, after all these years, is now a question for the jury and the jury found materiality because they convicted. So how do we review what appear to be pretty bizarre statements that law enforcement might not rely on in light of what was a factual finding of a jury that we may not, you know, without serious consideration, take away from them? Judge, I believe materiality is not a material issue in the obstruction of justice counts. And of course, your interpretation of my issue is heavily fact-dependent. And so what I'd like to do is just kind of explain what the facts are concerning these two particular counts. There were two co-defendants who were also indicted, Selena Fleeton and Howard Dale. The evidence showed that my client went to Fleeton and Dale with a script. It contained verbiage in it, essentially the same for both of these people. And there was a handwritten telephone number at the top of the script. Carraway told these two people separately to call that number and whoever answered the telephone read this script to them. Neither one of these people did that. As a matter of fact, Ms. Fleeton, I believe, gave a copy of the script to her lawyer. There was never any real effort on the part of Fleeton or Dale to communicate any obstructive information to a federal law enforcement agency. It's simply a script that was handed to them by Carraway. He says, call this number. Actually, the number turned out to be the number of the U.S. Attorney's Office in Birmingham, which I've called many times. So I recognized it right away, but there was no real interference on the part of these people concerning the ongoing investigation. And by the way, this particular obstructive behavior took place about a year after the charged conspiracy was over with. Now, that doesn't mean the investigation wasn't ongoing. I understand that. But it does put things in a different kind of light. That said, the law changed during the pendency of this appeal and y'all decided U.S. versus Chaffin or Chafin, which interpreted Fowler after the U.S. Supreme Court reversed and remanded it back to this court for further proceedings. The Chaffin case stands for the proposition that the burden of or the evidence in this case must be reasonably likely to influence the federal investigation. You had previously held that there required only a possibility that this influence or this would influence the federal investigation. But that reasonable likelihood standard has now raised the bar. So Judge Blackburn didn't know, I didn't know, no one knew at the time about Chaffin because it was decided about three months after we filed our briefs. So that's our position. The standard of proof has changed, the burden of proof has changed, the reasonable likelihood standard was not quoted by Judge Blackburn in her consideration of my Rule 29 motion. It was not quoted in the jury instructions, which were pattern instructions from the Eleventh Circuit at the time. So we believe because the law has changed that Mr. Carraway is due to be, or these particular convictions are due to be vacated and the case remanded back for resentencing. As to counts 59 and 60. And our burden of proof, Judge Martin, I believe you wrote the opinion in, how do you pronounce it, Frisk or Frisky? I don't know. I just write them. I don't say them. At any rate, but we cited that as standing for the standard of review, which is de novo in this particular case with the evidence must be construed in the light most favorable to the government. So. Thank you. That's it. Thank you. Mr. Neff. Thank you, Your Honors. Good morning. Jason Neff for the appellant, Mark T. Davis. I did not represent him in the initial trial. We come before this court this morning with several issues on appeal, specifically dealing with the sentencing issues. I'll point out the court . . . Can you just help me? Which arguments of your co-defendants did you adopt? The co-defendants? Uh-huh. Of these folks. I mean, your briefs, I wasn't clear on which arguments of theirs that you had adopted. Maybe none. Well, as it relates to mistrust, it would only be the interference with the trial judge in the trial. I wasn't there, but I read the transcript, as this court has, but mistrust I believe also had an objection that was left open or not ruled on, which we've listed as one of our arguments as well. Thank you. So, by not ruling on Mr. Davis' objection and then moving on to sentencing, essentially . . . See, I don't understand that argument. I mean, it looked pretty clear to me that the counsel withdrew the objection. I didn't see where he withdrew the objection, Your Honor. We're talking about the objection to the role and the offense? Yes, ma'am. Okay. Well, I guess the record will speak for itself, but when I read the record, it appeared to me that the reason why you didn't get a ruling was because counsel withdrew the objection. That's not the way I read the record. I apologize. And I'm not in a position to go back and read it right now, but what I recall is that she just moved forward with the sentencing and I think she said something to the effect of, is that all? And then there was no statement otherwise. So she did move on at that point, but that particular objection and this particular defendant's role in the conspiracy overall drastically would have impacted what his sentencing was. More specifically, she penalized him for going to trial. And more than once, she pointed out that he should have pled or the case should have settled. I think in one of her quotes, she said, I wish you had made different choices about whether to admit responsibility. And then . . . Well, it seemed like she couldn't make out the factual basis of the plea on day one. The judge said, you can plead guilty if you'd like on day two, but we have to get the trial moving here. And then ultimately, she never decided to do it again. That's what happened, isn't it? Never decided to go plead. To stand up and do anything other than finish out the trial. Yes, sir. I believe, and again, I wasn't present, but they just pushed forward with trial from what I can tell. Right. Well, counsel could have asked for a sidebar and said that the judge might want to plead. He certainly could have. But for her to enhance his sentence just because he didn't plea or more specifically, the statement that she made that he did not admit responsibility even at sentencing. And she increased his sentence by 14 months. And, you know, which is more than other co-conspirators. And so, we feel like he was penalized at that stage, whether you want to go back to the . . . But the sentence she imposed was at the low end of the guidelines in any event, wasn't it? I think she . . . well, it wasn't at the high end. Yes, ma'am. So . . . but certainly it wasn't. There was a case recently, the 11th Circuit, U.S. v. George, where the allocution was left out for that particular defendant. I think if you take that in context of what we're dealing with here, the objection in terms of an allocution, if you will, to be able to defend yourself at sentencing. And then the fact that she penalized him, I feel, for going to trial and not standing before the court and admitting his guilt at that time. And certainly, if he felt he's not guilty, he has a right to appeal, which is why we're here as well. So, I have . . . Mr. Billingsley. Good morning. Michael Billingsley for the United States. May it please the Court. Just to address a couple of things really quick. You're correct that the objection was withdrawn. That's document 121 in the record where it was withdrawn. And as to the adoption of the other issues, my recollection is that both Mr. Davis and Mr. Carraway put a statement in their brief stating that they were adopting the issues of the other appellants. However, because they're really specific to each one, I think the only one that actually is adopted by all three, in the government's opinion, would be the one about the district court's conduct. I'll just sort of go backwards in the order that the issues were addressed, and I will, of course, attempt to answer any questions that the court had, but quickly, with regard to the being punished for going to trial, the record just simply doesn't reflect that. Courts are allowed to give defendants lower sentences when they accept responsibility. It's built into the guidelines. The record reflects here that the court was just expressing that she didn't have any reason to give them leniency in that regard, because neither Mr. Davis nor Ms. Truss accepted responsibility, showed any remorse at all. As to the Carraway issue. Judge Blackburn did seem to be a little irritated with them, didn't she? I'm sorry, Your Honor? Judge Blackburn did seem to be a little irritated with them. She seemed frustrated. These were substantial sentences, and the fact that during the sentencing of Ms. Truss, the government read from her Facebook post, after the convictions had been entered, where she was still expressing that she didn't do anything wrong, that she was a victim. In light of the overwhelming evidence in this case, it was frustrating to the court. And Mr. Truss, at sentencing, said, Your Honor, if I had known this was a scam, I wouldn't have been involved again. The evidence in this case was overwhelming, so she was simply expressing frustration. I've got no reason to give you any leniency. And both of them, as you recognized, received low-end guideline sentences. There's just no way you can say they were punished for exercising the right to go to trial. As to the Carraway issue, I would just say that the number was for the U.S. Attorney's Office, and there was testimony at document 205, page 37, that it was for the United States Attorney's Office, which meets the definition of a law enforcement agency under the statute. He gave these two witnesses what one of them called a script, where he instructed them to call the number and to give this information to the United States Attorney's Office. He knew he was being investigated by the FBI. So as far as whether it's reasonably likely that it would go to a federal law enforcement officer, I think that question is appropriate to ask when it's not clear. Here it's clear that he intended this information, misinformation, to go to a federal law enforcement officer. With regard to the district court's conduct, recognize it as plain error. There's no objection. We would just simply disagree that the court crossed the line, showed any bias towards one party or the other. Courts are not required to sit silently and be disinterested parties during trial. Obviously a court, in every case I can remember reviewing, is asked to rule on a motion for judgment of acquittal at the end of the case. So the court needs to hear the evidence. The court needs to understand the evidence, and it's perfectly acceptable for the court to ask some questions during the trial. Nothing here indicates that the court crossed the line and became an advocate for the government. In fact, one example I'll give where the court got frustrated because the government didn't get evidence out of a cooperating witness that the cooperator expected something out of the plea agreement. The court prodded the government to get that information out. It didn't come out, so the court got it out. And she did that appropriately, in our view, because she said the jury needs to know that. The jury needs to know this cooperating witness is expecting you to recommend a lower sentence. Completely, completely appropriate. So we don't think there was anything to show that there was misconduct on the part of the trial court. If there are no further questions, the government is satisfied to rest on its briefs with regard to the remaining issues. Thank you. Your Honor, may it please the Court. Judge Troglod, you asked me to cite you a case to help my proposition. It's very difficult to find plain error in the give and take of a trial like that. I will refer and stand that Wright, United States v. Wright, is an appropriate case, and here's why. Wright says that the trial judge has a duty to conduct the trial carefully, patiently, and impartially. It must be above even the appearance of being partial to the prosecution. This record is plain and complete and full of instances where the trial court went out of its way, not just asking for some clarification so it could understand the evidence. It went out of its way to help the government make its case because the judge wanted the jury to convict. That's the only reasonable interpretation of the trial court's actions. Even the appearance of partiality to the prosecution is sufficient to say that's improper. That is an improper exercise of the judicial function that goes beyond Rule 614. What about the example that Mr. Billingsley just gave us where she questioned the government's witness about the fact that they were getting a benefit for their testimony against your clients? I mean, that seemed to not be harmful to your client. That seemed to be helpful, his example. The . . . Well, if it's . . . So Judge, if I can . . . I just want to make sure I understand the point of the question is that, so if it's helpful to my client, then it's okay, but if it's not helpful to my client, it's not okay. I think the concept has to be that none of it is okay. Your argument is that counsel was ineffective. I haven't raised that . . . Ineffective as a matter of law, practically. I haven't raised that argument because that's . . . No, but . . . . . . that's improper . . . No, that's a collateral argument, but that has to be . . . that's what you're arguing. Defense counsel was just plain ineffective. It's a different argument for a different forum, Your Honor, yes. It would be a different argument for a different forum, and it's not appropriate here . . . I understand. I'm just suggesting that's your argument. I would suggest to Your Honors that the record is so plain that this court can find . . . can find . . . Ms. Searle says the court can find that, you know, trial counsel was ineffective for doing that. I have not raised that argument. The reason I haven't raised that argument is because it's an inappropriate argument to make here because the record . . . I mentioned it because if the error is so clear that any judge would know it, then any lawyer would know to call it to the judge's attention. That's all I'm saying. And I don't disagree, but when the trial court below responds to an objection saying, Judge, I think you're leading the prosecution's case, the judge says, well, I hope I don't do that. Gee, I hope the lawyers think I don't do that, but then repeats and continues to do exactly what . . . I think we understand your point. I thank Your Honors. Mr. Linton. May it please the Court. Let me clarify something Mr. Billingsley said, and he was correct, but he didn't give you all the information. When it came out that the numbers that were handwritten on the top of the page of Exhibits 48 and 46 were to the U.S. Attorney's Office, I believe it came out through the testimony of Andre Dale, the indicted co-conspirator, who said at the time he was asked, I did not know that that was the number of the U.S. Attorney when Mr. Carraway gave me that script, but now I know. That was the only reference to the fact that it was a federal investigative agency. So and Mr. Billingsley says it wasn't clear to him, or it was clear to him at the time. Well, of course it was clear to him at the time. The issue is, was it clear to the jury? And it was not clear to the jury. So the government has not carried its burden of proof in regard to those two counts. And let me say something about Judge Blackburn before my time runs out. I'm the only person in this room that sat through two weeks of this trial. Judge Blackburn, and you know her because she sat by designation on this bench, she had the patience of Job to put up with mistrust, Mr. Carraway and the co-defendant, and on several occasions bent over backwards to conduct a Boykin colloquy with them so that they could enter their pleas and they would not. So if you can tell that I like Judge Blackburn, it's true. Thank you. Thank you. Mr. Neff. Okay. Mr. Neff, you and Mr. Linton were court-appointed lawyers and we greatly appreciate your having taken the assignment. We'll move to the next case. The Green v.